CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6475
FAX: (415) 436-7234
WENDY.GARBERS@USDOJ.GOV

Attorneys for United States of America

FILED

Nov 12 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JEFFREY AARON MARTINOV,<br>Defendant. | CASE NO. 3:26-mj-71467 MAG<br><br>NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on February 12, 2026, the above-named defendant was arrested pursuant to an arrest warrant (copy attached) issued upon an

☐ Indictment

☐ Information

☒ Criminal Complaint

☐ Other (describe) ________________________

pending in the Central District of California, Case Number 2:26-mj-06269.

In that case (copy of criminal complaint attached), the defendant is charged with a violation of Title 18 United States Code, Section 2251(a), (e), Attempted Production of Child Pornography.

The maximum penalties are as follows:

- Custody: 30 years maximum; 15 year minimum
- Supervision: maximum of life; 5 year minimum
- Fine : $250,000
- Special Assessment: $100 per felony count
- Assessment of $5000 under 18 U.S.C. § 3014
- Assessment of up to $50,000 under 18 U.S.C. § 2259A(a)(3)

Respectfully Submitted,

CRAIG H. MISSAKIAN
UNITED STATES ATTORNEY

Date: November 12, 2026

*Wendy M. Garbers*
WENDY M. GARBERS
Assistant United States Attorney

AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20) ☒ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

LODGED
CLERK, U.S. DISTRICT COURT
10/28/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: GSA DEPTUTY

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
10/28/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES OF AMERICA,

v.

JEFFREY AARON MARTINOV,

Defendant.

Case No. 2:26-mj-06269-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On July 25, 2024, in the county of Ventura in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 2251(a), (e) | See attached affidavit |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Brock Olson, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: October 28, 2026

*Judge's signature*

City and state: Los Angeles, California

Hon. Daniel S. Roberts, U.S. Magistrate Judge
*Printed name and title*

AUSA: Peter Dahlquist

# AFFIDAVIT

I, Brock Olson, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Jeffrey Aaron Martinov ("MARTINOV") for a violation of 18 U.S.C. § 2251(a), (e) (Attempted Production of Child Pornography) on or about July 25, 2024 in Ventura County.

2. This affidavit is also made in support of an application for a warrant to search the following digital devices (collectively, the "SUBJECT DEVICES"), in the custody of Port Hueneme Police Department ("PHPD"), in Port Hueneme, California, as described more fully in Attachment A:

a. A black iPhone lightning "Smart Charger Dock" with hidden camera, model number DC100Pro, FCC ID number 2AL56GF-H100, identified in PHPD's Case 24-09141 Report as item #58738 and in the Southern California High Tech Task Force Ventura County's ("HTTF") Case HT24-2134 Report as PHPD1638 ("SUBJECT DEVICE 1");

b. A blue Apple iPhone 15 Pro Max, serial number KX3F1WLMC7, identified in PHPD's Case 24-09141 Report as item #58739 and in HTTF's Case HT24-2134 Report as PHPD1639 ("SUBJECT DEVICE 2");

c. An Apple MacBook Pro, model number A1297, with serial number C2QHN00KDRJH, identified in PHPD's Case 24-09141 Report as item #58749 and in HTTF's Case HT24-2134 Report as PHPD1642 ("SUBJECT DEVICE 3");

d. A Centon Advanced Memory Card (red), 8GB, taken out of a Canon Camera, identified in PHPD's Case 24-09141 Report as item #58750 and in HTTF's Case HT24-2134 Report as PHPD1643 ("SUBJECT DEVICE 4");

e. A Maxell Maxdata Memory Card (green/white), 8GB, taken out of a Canon Camera, identified in PHPD's Case 24-09141 Report as item #58751 and in HTTF's Case HT24-2134 Report as PHPD1644 ("SUBJECT DEVICE 5");

f. An Apple MacBook Pro, model number A1398, Serial number C02KF2NTFFT0, identified in PHPD's Case 24-09141 Report as item #58753 and in HTTF's Case HT24-2134 Report as PHPD1646 ("SUBJECT DEVICE 6");

g. Two Apple iPhones, both identified in PHPD's Case 24-09141 Report as item #58754. In HTTF's Case HT24-2134 Report the phones were given differentiating identification numbers and are referred to as PHPD1647B, an Apple iPhone 5s, model number A1533, serial number F1FMK9BVFF9R ("SUBJECT DEVICE 7"); and PHPD1647C, an Apple iPhone 4, model number A1332, serial number 7L114UBQA4S ("SUBJECT DEVICE 8");[1]

h. An Apple Mac Mini Computer (2014), model number A1347, Serial number C07CV40DDD6H, identified in PHPD's Case 24-09141 Report as item #58759 and in HTTF's Case HT24-2134 Report as PHPD1650 ("SUBJECT DEVICE 9");

---

[1] There was a third iPhone identified in PHPD's Case 24-09141 Report as part of item #58754. However, the third iPhone: PHPD1647A, an Apple iPhone 6, model number A1549, serial number F6WNR1QJG5MC, is not included as part of this affidavit.

i. An Apple Mac Mini Computer (2023), model number A2686, Serial number YQLF70K76T, identified in PHPD's Case 24-09141 Report as item #58762 and in HTTF's Case HT24-2134 Report as PHPD1653 ("SUBJECT DEVICE 10");

j. A Western Digital easystore external storage drive, serial number 7HK92GTF, identified in PHPD's Case 24-09141 Report as item #58763 and in HTTF's Case HT24-2134 Report as PHPD1655 ("SUBJECT DEVICE 11");

k. A Western Digital easystore external storage drive, serial number 7HKJWK6J, identified in PHPD's Case 24-09141 Report as item #58764 and in HTTF's Case HT24-2134 Report as PHPD1654 ("SUBJECT DEVICE 12"); and

l. A USB Drive containing photos from disposable cameras seized from suspect's residence, identified in PHPD's Case 24-09141 Report as item #59997 ("SUBJECT DEVICE 13"), which contains the results from the development of the film located on:

i. Ten Kodak Disposable Cameras, identified in PHPD's Case 24-09141 Report as item #58746,

ii. One Fujifilm Waterproof Disposable Camera, identified in PHPD's Case 24-09141 Report as item #58748, and

iii. One Kodak Disposable Camera Roll, identified in PHPD's Case 24-09141 Report as item #58757.

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 2251(a), (e) (Production and Attempted Production of Child Pornography); 2251A(a)(1) (Offer to Obtain Custody of a

Minor for the Purpose of Producing Child Pornography); 2252A(a)(1) (Transportation of Child Pornography); 2252A(a)(2)(A), (b)(1) (Receipt and Distribution of Child Pornography); and 2252A(a)(5)(B) (Possession of Child Pornography) (the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT BROCK OLSON

5. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), assigned to the Ventura Resident Agency of the Los Angeles Field Office in the Central District of California. I have been employed by the FBI since October 2024 and have served as a Special Agent since March 2025. Before joining the FBI, I obtained a Bachelor of Arts in Psychology and Government, cum laude, from Claremont McKenna College in 2010; a Juris Doctor, magna cum laude, from Pepperdine University School of Law in 2017; and passed the California Bar Exam in 2017. I

practiced law for approximately six years, including serving as a Judicial Clerk for The Honorable Marcos E. López, U.S. Magistrate Judge for the United States District Court for the District of Puerto Rico; as an Associate Attorney with the law firm Epstein Becker & Green, P.C.; as Associate Corporate Counsel for Amazon Web Services; and as the Assistant Director for the Sudreau Global Justice Institute at Pepperdine Caruso School of Law, where I led the anti-human trafficking branch.

6. During my tenure as a Special Agent, I have received training regarding child sexual exploitation crimes, human trafficking crimes, cyber sex tourism crimes, and have conducted and participated in numerous investigations of criminal activity. In these investigations, I have taken part in the execution of various search and arrest warrants and participated in the seizure of evidence related to violations of United States law.

7. I am currently the co-coordinator of the Ventura County Child Exploitation Human Trafficking Task Force, which is responsible for investigating the sexual exploitation of children as well as labor and sex trafficking of both child and adult victims. As part of the task force, I am a federal law enforcement officer engaged in enforcing criminal laws, including those related to child exploitation, in the Central District of California, and I am authorized by law to request search and arrest warrants.

8. Prior to my assignment at the Ventura Resident Agency, I completed the 20-week Basic Field Training Course at the FBI

Academy in Quantico, Virginia. At the FBI Academy, I completed more than 800 hours of training in academics, case exercises, firearms training, and operational skills. Upon graduation, I received the Outstanding Academic Achievement Award. Before joining the Violent Crimes Against Children Squad at the Ventura Resident Agency, I served on the Criminal Threats Squad for the Los Angeles Field Office, where I was responsible for investigating alleged criminal threats and enforcing federal criminal statutes.

## III. SUMMARY OF PROBABLE CAUSE

9. On July 25, 2024, a thirteen-year-old girl (Minor Victim 1 or MV1), was visiting MARTINOV at his residence in Ventura County. MV1 viewed MARTINOV as an "uncle" and had stayed with MARTINOV and MARTINOV's wife before. While using MARTINOV's cellphone to play a game, MV1 discovered what appeared to be a live video feed of the upstairs bathroom at MARTINOV's residence that she had been using. Seeing the video feed prompted her to inspect the bathroom where she found an iPhone charging dock positioned toward the toilet and shower and believed it contained a hidden recording device. MV1 contacted her mother, photographed the device, and left the residence with her aunt. The following day, MARTINOV sent MV1 a text message claiming the incident was an unintended mistake.

10. Local law enforcement officers executed search warrants for MARTINOV's residence, vehicle, and person to investigate the use of a concealed video camera to secretly record a person in full or partial undress. In MARTINOV's car,

investigators found a black iPhone lightning “Smart Charger Dock” with a hidden camera. Investigators also seized additional digital devices during the search and searched those devices consistent with state search warrants.

11. On an external drive that was seized, investigators discovered a video of MV1 with created date of July 26, 2024, and a last accessed date of July 30, 2024, which depicts MV1 changing into a swimsuit in MARTINOV’s guest bathroom. On the same external drive, investigators found approximately 15 hidden-camera bathroom videos depicting another minor (Minor Victim 2 or MV2), who was about seven years old when the recordings were made. All 15 of those videos appear to document a single incident in the guest bathroom of MARTINOV’s residence at 776 Seawind Way, Port Hueneme, California. This footage also captures MARTINOV turning on the shower for MV2 before leaving the bathroom. On another device, an Apple MacBook Pro, investigators found approximately 14 hidden-camera bathroom videos depicting a third minor (Minor Victim 3 or MV3), who was about eleven years old when the recordings were made. The videos show MV3 using two different bathrooms and include footage of her undressing, showering, and using the toilet, as well as footage of MARTINOV setting up multiple recording devices and adjusting items to keep the cameras’ views unobstructed. Some of the videos capture the same events but from different angles, indicating that MARTINOV hoped to create surreptitious recordings from multiple angles.

12. Among the various devices, investigators also found other surreptitious recording videos that MARTINOV likely did not produce. For example, on an Apple Mac Mini Computer, investigators found five videos depicting adult or teenage women in showers or dressing rooms. On an external drive, investigators also found images, including a file entitled "Spying_on_little_girls.avi.jpg.," that were labeled within the image with a banner "Pedo Play." These images appear to be advertisements for an illicit website offering access to covertly recorded videos of minors in changing areas.

13. Investigators also discovered Child Sex Abuse Material, or CSAM, depicting victims identified through NCMEC's victim identification program, or CVIP. For example, on an Apple MacBook Pro, investigators found 13 videos of CSAM, of which CVIP reports show that four of these videos are known videos in which there is an identified child. These videos were located several subfolders deep, within the desktop folder labeled "Jeffy Stuff." On an external drive, investigators identified approximately 100 CSAM videos, and of those, CVIP reports show that 20 of those videos are known videos in which there is an identified child victim.

14. Finally, on various devices, investigators found voyeuristic visual depictions. Investigators found hundreds of videos and over a thousand images depicting apparent covert recordings of preteen females in various settings, including inside an indoor children's play facility. Several images display the "Kids World" logo, a location where MARTINOV had

been employed. In many of these images, the material primarily focuses on the buttocks and legs of the preteen females.

15. I seek a warrant to arrest MARTINOV for attempting to create CSAM depicting MV1 on July 25, 2024. Based on MARTINOV's (1) history of placing secret recordings devices in bathrooms used by children and directing devices at the toilet and shower, (2) using multiple angles to create recordings, (3) removing objects obstructing the views of secret recording devices, (4) possessing other surreptitious recording videos, (5) creating voyeuristic images of children, and (6) collecting CSAM depicting identified child victims, there is probable cause to believe that MARTINOV intended to create CSAM depicting MV1 on July 25, 2024. I also seek a warrant to search the SUBJECT DEVICES consistent with best practices in federal investigations consistent with the parameters of Attachment B. I also hope to attempt to access data on some of the SUBJECT DEVICES that were encrypted and that local authorities have been unable to access.

## IV. DEFINITION OF TERMS

16. In this affidavit, the terms "minor," "sexually explicit conduct," "visual depiction," "producing," and "child pornography" are defined as set forth in 18 U.S.C. § 2256. The term "computer" is defined as set forth in 18 U.S.C. § 1030(e)(1).

17. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do

not necessarily depict minors engaging in sexually explicit conduct.

18. A "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language, or HTML, and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol ("HTTP").

19. "Age difficult" refers to a visual depiction in which the apparent age of the individual cannot be reliably determined from the available imagery. The term is used when the subject's physical features, context, or image quality do not allow investigators to make a confident assessment of whether the individual is a minor or an adult.

20. "Child Sex Abuse Material" or "CSAM" is a term that is synonymous with "child pornography" as defined in 18 U.S.C. § 2256. The term is used to accurately describe such material as evidence of a crime involving the sexual exploitation of children and to distinguish it from adult "pornography." Use of the term CSAM underscores that the creation, possession, and distribution of this material inherently involve the abuse of real children.

## V. Background on NCMEC and Victim Identification

21. The National Center for Missing and Exploited Children ("NCMEC") was established in 1984 as a private, nonprofit 501(c)(3) organization. NCMEC provides services nationwide for families and professionals in the prevention of abducted, endangered, and sexually exploited children. Pursuant to its

mission and its congressional authorization (*see* 42 U.S.C. § 5773), NCMEC operates the CyberTipline and the Child Victim Identification Program ("CVIP") to assist law enforcement in identifying victims of child pornography and child sexual exploitation. NCMEC works with law enforcement, Internet service providers, electronic payment service providers, and others to reduce the distribution of child sexual exploitation images and videos over the Internet. NCMEC's CVIP serves as a central repository for information related to children depicted in CSAM. When images or videos are submitted to NCMEC, CVIP analysts use hashing technology and visual review to determine whether the material involves previously identified victims or potentially new, unidentified victims. Analysts compile reports for known victims and develop investigative leads for unidentified victims, which are then referred to law enforcement to assist in identifying and safeguarding those children.

## VI. STATEMENT OF PROBABLE CAUSE

### A. July 25, 2024: 13-Year-Old Reports Being Captured on Secret Recording Device at MARTINOV's Residence

22. On July 25, 2024, MV1's mother called PHPD and reported that her thirteen-year-old daughter, MV1, was visiting a longtime family friend, MARTINOV, at his residence at 776 Seawind Way. While at the residence, MV1 was playing games on MARTINOV's phone when she observed an application that depicted a still image of herself, wearing a sweater she owned. MV1 clicked on the application and the still image cleared. MV1 then saw what appeared to be live footage of the bathroom

located on the second floor of the house. This is the bathroom MV1 typically uses when visiting MARTINOV.

23. MV1 became concerned and contacted her mother. The mother arranged for her sister, MV1's aunt, who lived nearby, to pick MV1 up from MARTINOV's residence. MV1 went upstairs to the bathroom and noticed a black iPhone charging dock located on the counter, which was at the same level as the live video footage she saw on MARTINOV's phone. MV1 used her phone to take a photograph of the charging dock and exited the bathroom. MV1 believed there was a recording device inside of the charging dock. MV1 told MARTINOV that she was not feeling well and was going back to her aunt's house for the night. MV1 would have stayed at MARTINOV's residence until Monday, July 29, 2024, if it was not for this incident.

24. MV1's mother reported that MARTINOV is like an "uncle" to the family and it was normal for MV1 to stay with MARTINOV and his wife.

25. During a recorded interview with MV1 that same day, MV1 reported that while at MARTINOV's residence she discovered MARTINOV captured her on a hidden camera in a guest bathroom. MV1 explained that, before that day, MARTINOV was someone that she trusted.

26. MV1 reported that on July 25, 2024, she was using MARTINOV's iPhone as she normally does, because her phone was charging upstairs. MV1 accidentally swiped up and noticed a still image of herself wearing a sweater. MV1 stated she attempted to click on the image, but when she did so, the image

disappeared. The screen then turned into a live feed of the upstairs bathroom at MARTINOV's residence. MV1 recognized the bathroom as the one she used when she stayed at MARTINOV's residence. MV1 stated the live feed was labeled "Sky Zone T.O."

27. MV1 then contacted her mother to inform her of what she had seen. MV1 then went upstairs to check the bathroom and noticed an iPhone charging dock facing towards the toilet and shower. MV1 noticed this iPhone dock was at the same angle of the "live" feed on MARTINOV's iPhone. MV1 used her phone to take a photograph of the iPhone charging dock and sent the image to her mother. MV1 then told MARTINOV that she was not feeling well and wanted to leave. MV1's aunt then came to the residence and picked up MV1.

28. During her interview, MV1 reported that she had used the guest bathroom multiple times throughout the day, including when she undressed earlier in the day to go swimming. MV1 reported that she had seen the iPhone charging dock in that same location for approximately three years. Based on what she saw on MARTINOV's iPhone, MV1 believed the iPhone charging dock was the hidden recording device.

**B. MARTINOV Texts MV1 to Try to Explain "Mistake"**

29. On July 26, 2024, MARTINOV sent MV1 the following text message:

> Hey- so I figured out what happened ... and honestly it's not what you think. It was an unintended mistake. Later today, after you get back home, may I please FT you to explain and apologize?

30. MV1 did not respond.

### C. PHPD Execute Warrant at MARTINOV's Residence and Seize a Charging Doc with a Hidden Camera Along with the Other SUBJECT DEVICES

31. On September 3, 2024, PHPD Detective Kimberly Mora ("Detective Mora") authored a search warrant, which was approved by Ventura County Superior Court Magistrate Derek D. Malan. The warrant authorized investigators to search MARTINOV, his residence at 776 Seawind Way, Port Hueneme, California, and his 2018 black Hyundai Elantra GT hatchback. The search warrant was for "possible violation(s) of 647(J)(3)(A) [California] PC – using a concealed video camera to secretly record a person in full or partial undress."

32. On September 5, 2024, officers from PHPD executed a search warrant for MARTINOV's residence and vehicle. Based on my review of PHPD law enforcement reports, review of PHPD body worn camera footage from September 5, and search warrant photographs taken on September 5, I know the following:

a. On September 5, 2024, at approximately 10:30 a.m., Detective Sergeant Chavez, Sergeant Lopez Jr., Detective Miranda, Officer Martinez, Officer Ortiz, Officer Frum, Officer Magana, Officer Saldivar, and Detective Mora responded to 776 Seawind Way to execute the search warrant. Property Technician L. Negrete was also present and assisted with evidence collection.

b. At the time of the search warrant, MARTINOV was the only individual present in the residence. MARTINOV's wife also lived at the residence, but she was at work at the time law enforcement officers arrived to execute the warrant.

c. MARTINOV's residence was a two-story townhouse with a front-entry attached garage. The garage was labeled Room 1 by the search team. Along the right side of the garage is a gate and a subsequent pathway leading to the front door of the townhouse.

| | | | |
|---|---|---|---|
|  **IMG_7911** |  **IMG_7980** (Room 1) |  **IMG_7915** |  **IMG_7917** |

d. Immediately upon entering the townhouse, there is a staircase to the left, leading to the second story.

| | |
|---|---|
|  **IMG_7921** |  **IMG_7943** |

e. However, after passing by the staircase on the first floor, there is a half bath to the left (Room 3),[2] a

[2] Room 2 was a laundry room located on the left side of the pathway between the garage and the front door to the townhouse.

kitchen to the right (Room 4), and a living room area straight ahead (Room 5).

| | | | |
|---|---|---|---|
| <br>**IMG_7922** | <br>**IMG_7985**<br>(Room 3) | <br>**IMG_7987**<br>(Room 4) | <br>**IMG_7989**<br>(Room 5) |

f. At the top of the stairs is a white hallway cabinet. Turning right at the top of the stairs leads to the second story hallway.

| | | |
|---|---|---|
| <br>**IMG_7944** | <br>**IMG_7945** | <br>**IMG_7946** |

g. To the right is what appears to be the master bedroom (Room 6, with the master bathroom as Room 7);

| | | |
|---|---|---|
| <br>**IMG_7945** | <br>**IMG_7944** | <br>**IMG_7946** |

| | | |
|---|---|---|
| (Room 6) | (Room 6) | (Room 7) |

h. Straight ahead is a full bathroom (Room 8);

| | | | | |
|---|---|---|---|---|
|  IMG_8126 |  IMG_8127 |  IMG_8129 |  IMG_8128 |  IMG_8131 |

i. To the left is another bedroom (Room 9) and adjacent to this room is what appears to be an office (Room 10).

| | | | |
|---|---|---|---|
|  IMG_7964 (Room 9) |  IMG_7998 (Room 9) |  IMG_7969 (Room 10) |  IMG_8002 (Room 10) |

33. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 2, a blue Apple iPhone 15 Pro Max (serial number KX3F1WLMC7), was found in Room 9 on the dresser. In addition, photographs taken during the search show SUBJECT DEVICE 2 on a dresser in Room 9. The receipt for property notes that SUBJECT DEVICE 2 was located by Detective Mora and was seized by Detective Mora. Detective Mora stated in her report regarding this device: "On the date this

device was seized from Martinov, he informed me this smartphone was the one he was currently using as his cellphone. He informed me he had recently obtained it from his carrier after he broke his previous one and provided me with his six-digit PIN code."

34. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 3, an Apple MacBook Pro (model number A1297), was found in Room 10 in the closet. Photographs taken during the search show SUBJECT DEVICE 3 where it was located in the closet. The receipt for property notes that SUBJECT DEVICE 3 was located by Sergeant Lopez and seized by Detective Mora.

35. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 4, a Centon Advanced Memory Card (red), was found in the hallway cabinet, in the bottom left shelf. Photographs taken during the search show SUBJECT DEVICE 4 where it was located in the closet. The receipt for property notes that SUBJECT DEVICE 4 was located by Officer Miranda and seized by Detective Mora.

36. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 5, a Maxell Maxdata Memory Card (green/white), was found in the hallway cabinet, in the bottom left shelf. Photographs taken during the search show SUBJECT DEVICE 5 where it was located in the closet. The receipt for property notes that SUBJECT DEVICE 5 was located by Officer Miranda and seized by Detective Mora.

37. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 6, an Apple MacBook Pro (model number A1398), was found in Room 10 on the desk. Photographs taken during the search show SUBJECT DEVICE 6 where it was located on the desk. The receipt for property notes that SUBJECT DEVICE 6 was located by Detective Mora and seized by Detective Mora.

38. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 7, an Apple iPhone 5s (model number A1533), was found in Room 10 in a plastic file cabinet under a desk. Photographs taken during the search show SUBJECT DEVICE 7 where it was located in the file cabinet. The receipt for property notes that SUBJECT DEVICE 7 was located by Detective Mora and seized by Detective Mora.

39. The evidence log receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 8, an Apple iPhone 4 (model number A1332), was found in Room 10 in a plastic file cabinet under a desk. Photographs taken during the search show SUBJECT DEVICE 8 where it was located in the file cabinet. The receipt for property notes that SUBJECT DEVICE 8 was located by Detective Mora and seized by Detective Mora.

40. The evidence log and receipt for property of the search at MARTINOV's residence shows SUBJECT DEVICE 9, an Apple Mac Mini Computer (2014) (model number A1347), was found in Room 10 in a plastic file cabinet under the desk. A photograph taken during the search shows SUBJECT DEVICE 9 where it was located in the file cabinet. The receipt for property notes that SUBJECT

DEVICE 9 was located by Detective Mora and seized by Detective Mora.

41. The evidence log and receipt for property of the search at MARTINOV’s residence shows SUBJECT DEVICE 10, an Apple Mac Mini Computer (2023) (model number A2686), was found in Room 10 on top of the computer desk. Photographs taken during the search show SUBJECT DEVICE 10 where it was located on top of the desk. The receipt for property notes that SUBJECT DEVICE 10 was located by Detective Mora and seized by Detective Mora.

42. The evidence log and receipt for property of the search at MARTINOV’s residence shows SUBJECT DEVICE 11, a Western Digital easystore external storage drive (serial number 7HK92GTF), was found in Room 10 on top of the computer desk. Photographs taken during the search show SUBJECT DEVICE 11 where it was located on top of the desk. The receipt for property notes that SUBJECT DEVICE 11 was located by Detective Mora and seized by Detective Mora.

43. The evidence log and receipt for property of the search at MARTINOV’s residence shows SUBJECT DEVICE 12, a Western Digital easystore external storage drive (serial number 7HKJWK6J), was found in Room 10 on top of the computer desk behind the monitor. Photographs taken during the search show SUBJECT DEVICE 12 where it was located on top of the desk behind the monitor. The receipt for property notes that SUBJECT DEVICE 12 was located by Detective Mora and seized by Detective Mora.

44. The evidence log and receipt for property of the search at MARTINOV’s residence shows that ten Kodak Disposable

Cameras were located in Room 6 on bookshelves next to the bed. Photographs taken during the search show the Kodak Cameras where they were discovered. The receipt for property notes that the ten Kodak Disposable Cameras were located by Officer Martinez and seized by Detective Mora. The evidence log and receipt for property of the search at MARTINOV's residence shows that a Fujifilm Waterproof Disposable Camera was located in Room 10 on top of a cardboard box and a Disposable Kodak Camera Roll was located in Room 10 in a plastic file cabinet under the desk. The receipt for property notes that the Fujifilm camera and the Kodak Camera Roll were located by Detective Mora and seized by Detective Mora. Photographs taken during the search show the Fujifilm camera and the Kodak Camera Roll where they were discovered. According to Detective Mora's report, on October 10, 2025, all twelve of these items were transferred to Dexter's Camera, located at 1972 E. Main Street, Ventura, to be developed. The images were then placed on a USB drive, SUBJECT DEVICE 13, by the owner of Dexter's Camera and provided to Detective Mora.

45. MARTINOV's vehicle, a 2018 black Hyundai Elantra GT hatchback, California License number ending in 943, was also searched on September 5, 2024. Based on my review of Detective Mora's Report, a PHPD report written by Detective Sergeant Chavez, PHPD body worn camera footage from September 5, and search warrant photographs taken on September 5, I am aware of the following: on the day of the search warrant, MARTINOV's wife

took MARTINOV's vehicle to work. PHPD Detectives called the wife and she agreed to drive the vehicle to PHPD for a search.

46. The wife was interviewed by Detective Sergeant Chavez and made the following statements, which is a summary only: MARTINOV and herself did not have any cameras inside or outside the residence and MARTINOV never mentioned anything about installing cameras anywhere. The phone charging dock in the hallway bathroom did not belong to her. She noted that it used to be in the spare room for guests, but someone moved it to the bathroom. The wife did not know where the charging dock was now as someone had moved it out of the bathroom. MARTINOV did not tell her about the charging dock and she did not know that it was a hidden camera.

47. Senior Detective Miranda and Detective Mora searched the vehicle consistent with the search warrant. They located SUBJECT DEVICE 1, a black iPhone lightning "Smart Charger Dock" with hidden camera (model number DC100Pro), in the trunk of the vehicle. Upon being questioned by Detective Mora, the wife stated that she did not put the charging dock in the vehicle and she did not know who put it there. Detective Mora showed the wife the phone charging dock that Detective Mora located in the vehicle and the wife identified the charging dock as the one she had seen in the bathroom of the residence.

**D. MARTINOV Claimed He Installed the Hidden Camera to Record Plumbers and He Had Smashed His Cellphone**

48. Based on my review of body worn camera footage from the date of the search warrant, I am aware of the following:

49. While MARTINOV was initially handcuffed when being removed from the residence, Detective Mora informed MARTINOV that he was not under arrest but being detained because the officers were serving a search warrant. MARTINOV was informed that the handcuffs would be removed once the officers determined there was no threat within the home. MARTINOV stated that he understood.

50. Prior to the interview, the handcuffs were removed and MARTINOV sat in a chair directly outside his front door. MARTINOV was then permitted to review a copy of the search warrant. After MARTINOV reviewed the search warrant, Detective Mora again informed him that he was not under arrest. While MARTINOV indicated that he may want to speak to an attorney prior to speaking to law enforcement, ultimately, after being reminded that he was not under arrest, MARTINOV decided to give a "limited statement."

51. MARTINOV was interviewed by Detective Miranda and Detective Mora. MARTINOV made the following statements, which is a summary only:

a. A few weeks before MV1's visit, MARTINOV's landlords had workers coming to fix the toilet in the upstairs hallway bathroom.[3] The workers were going to come when MARTINOV

[3] Based on my review of Detective Mora's reports and of body worn camera footage, I am aware that MARTINOV's landlords (SfK. B.), the property owners of 776 Seawind Way, visited PHPD on September 23, 2024, to speak to Detective Mora. MARTINOV's landlords informed Detective Mora that MARTINOV and his wife had been living in the property for nine years. The landlords stated that MARTINOV and his wife had not mentioned plumbing issues and the landlords had not agreed to send a plumber to the property.

and his wife were not at home. MARTINOV owns tens of thousands of dollars of musical gear and has other valuables in his home. Thus, MARTINOV did have a hidden camera, but the intent was to ensure the workers did not take anything or do anything they were not supposed to do. While these workers were supposed to come weeks before MV1's visit, the workers never came.

b. MARTINOV does not know if MV1 was naked in the recording because he did not see the recording. When MARTINOV realized what had happened, he deleted everything. The camera is motion activated and MARTINOV's phone gets a notification whenever it is activated, but he does not always check the notifications.

c. MARTINOV stated that the black charging dock in the bathroom was not the recording device; rather, the recording device was in the light switch. MARTINOV stated he threw out the charging dock because he was emotional and believed that MV1 would think that the charging dock was the recording device. At the time, MARTINOV smashed his phone, ripped the charging dock out of the wall and smashed it. MARTINOV did not say what he did with his phone or the black charging dock, but stated that he disposed of them.

d. In addition to the bathroom camera, MARTINOV had other cameras in the home. However, other than stating that one of the other cameras was in the room with the drums, MARTINOV did not want to provide the location of the cameras or the type of cameras.

e. MARTINOV stated he has lived in this home for eight years. The upstairs hallway bathroom is a guest bathroom, which MARTINOV and his wife do not typically use.

f. MARTINOV's stated his wife had nothing to do with this and did not know anything about it. MARITNOV reiterated: "Another thing I want to be adamant about is my wife knew nothing. She is completely innocent. She knew nothing."

g. MARTINVO stated MV1 is like a niece to MARTINOV and he has only ever taken good care of her. They had a very close relationship. MARTINOV has known MV1 basically since she was born. This was the biggest mistake of MARTINOV's life and he wished he had removed the camera. MARTINOV is also close with MV1's older sister. MV1's mother does the best she can with both of her kids, but "there is no dad, there has never been a dad. So that's one of the reasons we are kinda close." MARTINOV visits them in Bakersfield and they come to Port Hueneme to visit him. MARTINOV feels "so bad" for MV1, because she has to go through this situation. Martinov stated: "I can't imagine how embarrassed [MV1] must have felt, and how awful she must have felt. That's why I got so upset that night too, because all I could think of was how bad it must have been for her, especially from a trusted adult, somebody who cares about her."

52. Based on my review of the SUBJECT DEVICES, including SUBJECT DEVICE 6, an Apple MacBook Pro (model number A1398), on which copies of MARTINOV's resumes were discovered; MARTINOV's recorded interview on the day of the search warrant; and on

recent law enforcement surveillance of MARTINOV, I know the following: MARTINOV was a teacher for 20 years. MARTINOV was a high school teacher at Quartz Hill High School from August 1991 until August 1993 and Palmdale High School from August 1993 until August 1997. MARTINOV was then the head middle school teacher at Emerson School from 1998 until 2008. MARTINOV was the Executive Director of the International Leadership Academy, a position that included tutoring individual students in various subjects, from November 2008 until August 2016. In September 2016, MARTINOV transitioned to work as an operations manager at "Kids World" in Thousand Oaks, California, which is an indoor play structure facility. In approximately 2019, Martinov began working at Sky Zone in Thousand Oaks. At the time of the search warrant, in September of 2024, MARTINOV was the assistant general manager at Sky Zone Thousand Oaks. As of August of 2026, MARTINOV was working as the operations manager at Sky Zone Trampoline Park in San Carlos, California, in the Northern District of California. MARTINOV has also been a youth Scrabble coach. During his interview with PHPD, MARTINOV stated: "I spent a majority of my career taking care of kids, you know, protecting kids, not trying to hurt kids."

**E. Investigators Find CSAM on Seized Devices**

53. After seizing the SUBJECT DEVICES, Detective Mora obtained various warrants to search the devices. As detailed below, on the SUBJECT DEVICES, investigators found videos that appear to have been recorded by SUBJECT DEVICE 1 in the bathroom at MARTINOV's residence. In addition, on the SUBJECT DEVICES,

investigators found additional hidden camera bathroom videos recorded by unknown devices at MARTINOV's residence, in a hotel room bathroom, and in an additional residential bathroom. These videos depict female children using the bathroom, undressing, and exposing their nude breasts, genitalia, and buttocks. In some of these videos, MARTINOV can be seen setting up the recording device and exiting the bathroom prior to the female children entering the bathroom. Investigators identified three females, all appearing to be children.

54. During the examination of the contents from the seized electronic devices, more than a thousand CSAM images/videos of nude females were located, including videos of adult males engaged in sexual intercourse with juveniles.

**F. Evidence Discovered During Forensic Review of the SUBJECT DEVICES**

1. <u>SUBJECT DEVICE 2: Blue Apple iPhone 15 Pro Max (serial number KX3F1WLMC7)</u>

*a. MARTINOV Admitted Using SUBJECT DEVICE 2 and Provided Passcode*

55. As noted above, Detective Mora stated in her report regarding this device: "On the date this device was seized from Martinov, he informed me this smartphone was the one he was currently using as his cellphone. He informed me he had recently obtained it from his carrier after he broke his previous one and provided me with his six-digit PIN code." In addition, a Cellebrite Preliminary Device Report for this device identified multiple accounts, including accounts for Facebook, Venmo, Microsoft Teams, Google Accounts, and Google Maps, which

list "Jeff Martinov" or "Jeffrey Martinov" under the account name.

*b. SUBJECT DEVICE 2 Had Images and Videos Depicting Prepubescent or Preteen Females*

56. On SUBJECT DEVICE 2, investigators discovered approximately 140 images depicting what appears to be prepubescent and preteen females in underwear, swimsuits, leotards, skirts, dresses, and similar styles of clothing. Most of the images appear to be screen shots of "reels," short video clips, from a social medial website. Investigators also found approximately 73 videos depicting what appears to be prepubescent and preteen females in swimsuits, shorts, and skirts. The videos appear to be made for social media and many of the videos are of prepubescent and preteen females dancing.

*c. SUBJECT DEVICE 2 Had Images of MV3*

57. On SUBJECT DEVICE 2, investigators also found approximately three non-CSAM images which appear to depict MV3. Two of the images have "Created" dates of "4/24/2014" and the third image has a "Created" date of "4/26/2014."

*d. Email and Note regarding Website "IMGSRC"*[4]

58. On SUBJECT DEVICE 2, investigators discovered an email with a "Timestamp" of "7/8/2016," from "eljeffito@icloud Jeff Martinov (owner)" sent to "mooi.enjong@yandex.com" with a Subject line of "Profile Pic." The body of the email states: "Hi[.] I really like your albums on imgsrc! However, I was

[4]Based on my research into this website, I understand the website to be a Russian photo sharing website.

hoping to get the pic in your profile and didn't see it. Would you mind sending me the full size pic please? I'd be happy to send something equally as beautiful in return. Thanks!" In addition, discovered on the device is a "Note" with a title of "imgsrc" and a body of "imgsrc [¶] user=walkingman [¶] album is 'various cute young girls.'"

2. <u>SUBJECT DEVICE 3: Apple MacBook Pro (model number A1297)</u>

*a. SUBJECT DEVICE 3 Has User Name of "Jeff," Includes Videos Depicting MARTINOV, and Documents Authored by ""Jeff Martinov :0)"*

59. According to HTTF Forensic Examiner Solis's report: "The computer contained one user created account named 'Jeff.'" In addition, an Axiom Evidence Source Report for this device notes an IA Top Level A-List Account for "velvetknight2@yahoo.com," which is one of MARTINOV's email accounts.[5] Furthermore, as detailed below, multiple videos were found on this device in which MARTINOV is seen setting up a hidden camera device. Lastly, discovered on this device were multiple Microsoft Word documents in which the author is noted as "Jeff Martinov :0)." One of which is labeled "Hi Jen.docx" and details MARTINOV's plans for his attendance at a competition on April 26-27, 2014, in which he invites MV3 to attend. Based on my participation in this investigation, I am aware that MV3

[5] Based on responsive information I received from Yahoo Inc. on January 15, 2026, I am aware that the email of "velvetknight2@yahoo.com" has a registration date of 05/26/2003 to a "j martinov," with recovery email of "eljeffito@icloud.com" and a recovery phone of "+18057992270."

did in fact attend this competition with MARTINOV on April 26-27, 2014.

*b. SUBJECT DEVICE 3 Contains 14 Hidden Camera Bathroom Videos Depicting MV3*

60. Based on my review of this device, Detective Mora's reports, and Detective Mora's recorded interviews of MV3 and MV3's mother, in which MV3 and MV3's mother identified MV3 in still shots from the videos, I am aware of the following: the device contains approximately 14 hidden camera bathroom videos, which depict a preteen female. During the investigation, this female was identified as MV3, year of birth in 2002, who was approximately 11 years old when the videos were recorded. The videos depict MV3 using two different bathrooms, for example:

a. Video with file name "s4REC_0002.mov" is a 20-minute video that depicts MV3 using the toilet, undressing, showering, and getting ready in a residential bathroom. MV3's exposed breasts, buttocks, and genitalia are seen during the video. Based on PHPD's interview of MV3 and my own interview of MARTINOV's former sister-in-law, it is believed that this residential bathroom was located in MARTINOV's former residence in Fremont, California. An additional video, with file name "s3REC_0001.mov" is a 20-minute video that appears to depict the 20 minutes prior to "s4REC_0002.mov." In "s3REC_0001.mov," MARTINOV appears to set up the recording device to face the toilet and shower, exits the bathroom, and then returns approximately 11 minutes later to set up a second recording device. MARTINOV then returns to the bathroom with MV3 and

shows her how to turn on the shower. MV3 appears to set a towel down on the counter blocking the view of the recording device. MARTINOV moves the towel so that it is no longer blocking the recording device. MARTINOV can be heard helping MV3 to confirm that the bathroom door is closed as he exits. MV3 begins to undress and use the toilet when the video ends. A third video, with file name "s1PICT0001.mov" is a 19-minute and 46-second video, which appears to depict the same events from "s4REC_0002.mov" and "s3REC_0001.mov" from a slightly higher angle, which indicates that MARTINOV used two recording devices. The events depicted in "s1PICT0001.mov" start approximately halfway through "s3REC_0001.mov" and end approximately halfway through "s4REC_0002.mov." Non-contraband screenshots of the videos depicting MARTINOV are included below:

| **Event** | **s3REC_0001.mov** | **s1PICT0001.mov** |
|---|---|---|
| Martinov setting up recording device. |   12:56 |   00:00 |

| | | |
|---|---|---|
| MV3 sets down towel. |  18:28 |  5:13 |
| Martinov moves towel. |  18:43 |  5:25 |
| MV3 closes door. |  18:53 |  5:35 |

b. Video with file name "vREC_0006.mov" depicts MARTINOV appearing to set up the recording device and possibly a second recording device in a residential bathroom. After MARTINOV exits, MV3 enters and uses the toilet. MV3's genitalia is seen during the video. Screenshots depicting MARTINOV from the video are included here.

| | | |
|---|---|---|
|   |   |  |
| 00:01 | 00:10 | 00:24 |

c. Video with file name "6REC_0001b.mov",[6] depicts MARTINOV setting up the recording device in a hotel room bathroom before exiting.[7] MV3 enters and calls for MARTINOV to show her how to turn on the shower. The recording device becomes blocked by a towel and/or clothing, which MARTINOV appears to move so that the recording device is no longer blocked, and then he exits the bathroom. MV3 proceeds to undress, shower, and then get dressed. MV3's exposed breasts, buttocks, and genitalia are seen during the video. Screenshots depicting MARTINOV from this incident are included here:

[6] Videos with file names "5REC_0004.mov" and "7REC_0005.mov" appear to depict the same incident as "6REC_0001b.mov" but from a slightly different angle, which shows that MARTINOV likely used two separate recording devices. In "5REC_0004.mov", MV3's genitalia and breasts can be seen. In "7REC_0005.mov", MV3's buttocks and breast can be seen.

[7] Based on my participation in this case, Detective Mora's recorded interviews of MV3 and MV3's mother, my own interview of MV3's mother, and emails provided by MV3's mother, I am aware that from April 24-28, 2014, MV3 stayed with MARTINOV at a hotel in Rhode Island as she attended a competition with MARTINOV as her coach.



6REC_0001b – 00:01



5REC_0004 – 00:01




5REC_0004 – 00:07

d. In addition to the above referenced videos, there are another five videos in which MARTINOV can be seen setting up a recording device prior to MV3 entering the bathroom(s): "mREC_0001.mov," "1REC_0001bb.mov," "2REC_0001trip.mov," (likely same incident as "1REC_0001bb.mov" from a different angle) "4REC_0001.mov," and "3REC_0002.mov." Furthermore, in the video with file name "4REC_0001.mov," after MV3 exits the bathroom, the recording device appears to be picked up and MARTINOV's face can be seen before the video cuts out, which indicates that MARTINOV entered into the bathroom to turn off the recording device after MV3 used the bathroom.

*c. SUBJECT DEVICE 3 Contains Additional Videos of MV3*

61. Also on SUBJECT DEVICE 3, investigators found videos with file names "2IMG_8646.mov," "3IMG_8647.mov," "4IMG_8648.mov," "5IMG_8649.mov" and "6IMG_8650.mov." These are short video clips with "Created Date[s]" of "4/25/2014." The videos depict a female laying on a bed with white sheets and using her cell phone. The female is wearing a yellow T-shirt and blue, spandex-type shorts. Based on the clothing, which

matches clothing worn by MV3 in the hidden camera videos, the female appears to be MV3. In the videos, the camera is often directed at the MV3's groin area. In three of the videos, MV3 and a male voice can be heard talking. I believe this voice to be MARTINOV's voice and I am familiar with his voice from the hidden camera videos and also body worn camera footage taken by PHPD during the search of MARTINOV's residence.

*d. SUBJECT DEVICE 3 Contains Voyeuristic Images of Teens*

62. On SUBJECT DEVICE 3, investigators discovered approximately 705 images, which contain the letters "IMGSRC.RU" in their filenames and appear to be both erotica and voyeurism of minor girls. The images are mainly of prepubescent, preteen, and teenage (or age difficult) girls in underwear, bikinis, and other similar attire. In a few of the images, exposed breasts can be seen. Approximately 693 of the images appear to be Quicklook thumbnail cached images, while 12 of the images appear to be full sized.

*e. SUBJECT DEVICE 3 Had Bookmarks Showing Sexual Interest in Children*

63. On SUBJECT DEVICE 3, investigators discovered approximately 14 bookmark entries for groups and/or users on the website "IMGSRC.RU," such as "liloneluvr," "lovethetinygirls," "littlones," "preteen_father," "welovelilgirls," "publicteenvoyeur," "skwlgirlover34," and "ilovetweens,"

3. <u>SUBJECT DEVICE 4: Centon Advanced Memory Card (red)</u>

*a. SUBJECT DEVICE 4 Contains Images of MARTINOV*

*and House Where He Currently Resides*

64. Based on law enforcement database checks, DMV database checks, and surveillance conducted by law enforcement, I believe that MARTINOV currently resides at 1761 Manor Drive, Hillsborough, California 94010. On SUBJECT DEVICE 4, investigators found approximately 38 images, which appear to depict 1761 Manor Drive. The images all have "CreateDate[s]" of "05/09/2015" and appear to depict a pool party and games involving minors. MARTINOV is in a few of the images.

*b. SUBJECT DEVICE 4 Contains Images of MV3 from 2014*

65. On SUBJECT DEVICE 4, investigators discovered approximately 38 images which appear to depict MV3. The images have "CreateDate[s]" of "04/05/2014," "04/26/2014," and "04/27/2014." The images from April 5, 2014, appear to depict MV3 and other minors practicing a game in a residence. The images from April 26 and 27, 2014, appear to depict MV3 and other minors participating in a competition. The images all have a make of "Canon" and Model of "Canon EOS Digital Rebel XTI." Based on an open source search, I believe that a "Canon EOS Digital Rebel XTi" is a Canon digital camera that was released in approximately 2006. During an interview with MV3's mother, investigators learned MV3 flew from Burbank to San Jose for the weekend of April 5, 2014, to participate in a "camp" with MARTINOV. During this same interview, investigators confirmed that MV3 traveled to Rhode Island with MARTINOV to participate in the competition on April 26, and 27, 2014. MV3's

mother provided an email that shows MARTINOV communicated with MV3's mother about the competition at least as early as March 18, 2014.

4. SUBJECT DEVICE 5: Maxell Maxdata Memory Card (green/white) Contains Images of Girls at Pools

66. On SUBJECT DEVICE 5, investigators discovered approximately 35 images of what appears to be prepubescent or preteen females in swimsuits. All the images appear to be in the same or similar setting, which appears to me to be at a community pool, pubic pool, and/or a hotel pool. It does not appear to me that the prepubescent/preteen females know that images are being taken of them. The images also appear to have been taken from farther away, as the view is often from slightly up above and there are objects in the way, such as trees, bushes, poles, and umbrellas. The images have "CreateDate[s]" of "04/14/2012," "04/16/2012," and "07/04/2015," with a make of "Canon" and Model of "Canon EOS 10D." Based on an open-source search, I believe that the "Canon EOS 10D" was a discontinued Canon camera, which was a semi-professional digital camera.

5. SUBJECT DEVICE 6: Apple MacBook Pro (model number A1398)

*a. SUBJECT DEVICE 6 Contains Evidence of Use by MARTINOV and His Wife*

67. Discovered on the desktop of this MacBook Pro is a folder labeled "Jeffy Stuff." Additionally, discovered on this device were multiple documents that are attributed to or reference Jeff or Jeffrey Martinov. For example, there is a Microsoft Excel file labeled "Stuff for Jeff to Master";

multiple PDFs with different versions of "Jeff's Resume" in which the specific person listed in the resume is "Jeff Martinov", an address of "776 Seawind Way, Port Hueneme, CA 93041", an email of "eljeffito@icloud.com", and notes employment history of "Kids World" beginning in September of 2016; PDFs labeled "September" and "October" which contain invoices from "Jeff Martinov" to "Prager University"; and a Microsoft Word document labeled "Resign Letter" which is signed by a "Jeff Martinov."

68. The Evidence Source Report for this device lists a "Computer Name" as in MARTINOV's wife's first name. Also discovered on this device were multiple documents that are attributed to or reference MARTINOV's wife. For example, multiple documents with different versions of the wife's resume; a document labeled as a recommendation letter in which the wife is referenced; and a document labeled "Phone Stuff for," the wife, which appears to contain information on a Total Wireless account in which the email listed is "mrsmartinov@yahoo.com."

*b. CSAM Videos in Folder Labeled "Jeffy Stuff"*

69. Discovered on this device were approximately 13 videos of CSAM. These videos were located several subfolders deep, within the desktop folder labeled "Jeffy Stuff." These videos were submitted to NCMEC on March 24, 2026, for review through CVIP. On June 9, 2026, NCMEC provided a Child Identification Report and a Victim Identification Report. The reports identified four of the videos as known videos in which there is

an identified child. The four videos with an identified child are described here:

a. Video with file name "779ACD2D-AB26-4369-B31F-173FADC0069A.mov," depicts an adult male engaged in sexual acts with a preteen female who appears to be semi-unconscious. The preteen female is sitting astride the adult male on a red couch. The preteen juvenile is wearing what appears to be a bright colored swimsuit top, no bottoms, and thigh high American flag socks. The adult male appears to be completely nude and is inserting his right index finger into the preteen female's anus or vagina.

b. Video with file name "417E3FAB-6FA2-4288-9848-BA3B9DC8A747.mov," depicts a prepubescent female lying on her back playing on an iPad like device. While whispering questions to the prepubescent female, an adult male pulls the prepubescent female's underwear to the side and repeatedly inserts the tip of his erect penis into the prepubescent female's vagina. During the video, the prepubescent female can be heard saying "ow," "owwie," and "it hurts."

c. Video with file name "B3D8631C-1A11-4D50-9446-D25B5C8A885F.mov" depicts an erect, adult penis being orally copulated by a prepubescent child of an unknown gender. The adult male and prepubescent child appear to both be standing up in a bathroom. The prepubescent child is as tall as the adult male's waist.

d. Video with file name "E83A8A2E-1E10-4AAB-BC06-5211EFA29C09.mov," depicts a male wearing a condom having sexual

intercourse with a nude prepubescent female. The video is from the perspective of the male. Consequently, at times the video shows the male's penis penetrating the prepubescent female's vagina, the prepubescent female's bare chest, and the prepubescent female's face.

6. SUBJECT DEVICE 7: Apple iPhone 5s (model number A1533)

a. *SUBJECT DEVICE 7 Lists User as "Jeffrey Martinov" and Facebook Account for "jeff.martinov"*

70. The Cellebrite Preliminary Device Report for this device notes that the last backup was to a computer named "Jeff's Mac mini." Under Sync data, the report notes a sync host name of "Computer: Jeff's Mac mini/User: Jeffrey Martinov." In addition, a Facebook Legacy and a Facebook account both have a user name of "jeff.martinov."

b. *SUBJECT DEVICE 7 Contains Kids World Images Focused on Buttocks and Legs of Preteen Females and Other Screenshots of Preteens*

71. On SUBJECT DEVICE 7, investigators found approximately 62 images of what appears to be preteen females in shorts. Many of the images appear to be focused on the buttocks and legs of the preteen females. All images appear to be taken at an indoor children's play place and a few of the images depict the logo for "Kids World," which is where MARTINOV was employed.

72. Investigators also found approximately 61 images of prepubescent or preteen females in swimsuits, underwear, or shirtless. A majority of the images appear to be either screenshots of YouTube videos or the website "imgsrc.ru."

7. SUBJECT DEVICE 8: Apple iPhone 4 (model number A1332)

73. I am aware, based on HTTF Forensic Examiner Solis's report, that Examiner Solis "was unable to extract any information from the device, due to it constantly turning off. It would only stay powered on for a short time, before restarting, possibly due to a bad battery. [Examiner Solis] was able to extract the phone number from the SIM card and perform a manual exam . . . ." Consequently, at this time, I was not able to fully review this device. Based on my training and experience, I believe that the FBI Computer Analysis Response Team may be able to gain access to this device utilizing specialized techniques consistent with the parameters of the proposed warrant.

8. SUBJECT DEVICE 9: Apple Mac Mini Computer (2014) (model number A1347)

a. *SUBJECT DEVICE 9 Contains Evidence of use by MARTINOV and Wife, and Video of an unknown juvenile female.*

74. I am aware, based on HTTF Forensic Examiner Solis's report that "The computer did not list user account names but in the 'Identifiers - People' section, I was able to locate several names of 'Jeff Martinov' and" the name of MARTINOV's wife. Additionally, discovered on this device were multiple documents that are attributed to or reference "Jeff" or "Jeffrey Martinov." For example, there is a PDF labeled "NetflixGiftsSubscription.pdf," which appears to be a virtual gift card for 12 months of movies for Netflix from "Jeff Martinov"; a PDF labeled

"ESTIMATE_003190_BayAreaYouthScrabble.pdf," which appears to be an estimate on the cost of t-shirts with an attention to "Jeff Martinov"; a Microsoft Word document labeled "Bay Area Youth Scrabble Fact Sheet" in which "Jeff Martinov" is listed as the director; and another Microsoft Word document labeled "Dear Friends," which is a letter signed by "Jeff Martinov [¶] Director, Bay Area Youth Scrabble." Furthermore, discovered on the Desktop of this device is a folder labeled MARTINOV's wife's first name and "stuff from thumb drive" and also discovered on this device were documents that reference the wife by name. For example, a Microsoft Word document labeled "Form B Cover Letter to Teachers.doc," which appears to be a form letter with a signature block for the wife; a Microsoft Word Document labeled "Goal update note," which appears to be another form letter with a signature block for the wife; and a Microsoft Word Document labeled "Prime and composite," which appears to describe a math assignment created by the wife.

*b. SUBJECT DEVICE 9 Contains Hidden Camera Videos*

75. On SUBJECT DEVICE 9, investigators found approximately four videos appearing to depict hidden camera videos of women. One of the videos appears to depict a teenage women showering in a communal/locker room setting, two of the videos appear to depict adult and/or teenage women changing in a bathroom or bedroom setting, and one video appears to depict an adult and/or teenage woman changing in a dressing room. In all of the videos, the women appear to be unaware that they are being

recorded. The videos are stored in a desktop folder labeled "havent looked at" and all have the same source: "PHPD1650 Apple Mini 320GB.E01 - Partition 2 (Apple HFS+, 297.77 GB) Locnar\Users\halfrest\Desktop\havent looked at\." One of the videos has a "Created Date" of "4/14/2013" and the other three videos have "Created Dates[s]" of "4/15/2013." All of the videos have "Last Accessed Date[s]" of "4/15/2013." The file name for each of the videos is as follows: 765562_hidcams_rus_hairy_pussy_teens_shaving_in_shower.flv;[8] 1092524_have_a_look_to_my_cute_sister_in_bathroom._hidden_ca.fl; 1630509_voyeur_sister_dressing_after_shower.flv; and 1626701_hidden_in_shopping_mall.flv.

76. On the device, investigators also found a 12 minute and 10 second video with a file name of "1760321_uncle_jeb_heather_in_the_shower.flv." Similar to the four hidden camera videos noted above, this video was stored in a desktop folder labeled "havent looked at" and has a "Created Date" and a "Last Accessed Date" of "4/15/2013." This video depicts what appears to be an adult woman showering; however, based on the woman's own commentary, it appears that she is aware she is being recorded and that individuals are watching

---

[8] This video was submitted to NCMEC on July 10, 2026, for review through the Child Victim Identification Program, or CVIP. However, on October 26, 2026, NCMEC reported that "NCMEC has no information pertaining to any of the individuals seen within the files." The other three videos noted here were submitted to NCMEC on October 23, 2026, for review through the Child Victim Identification Program, or CVIP. While the results are still pending, an IHVC report noted that the video labeled "1626701_hidden_in_shopping_mall.flv" has a recognized hash value.

her video live. This video was submitted to NCMEC on October 23, 2026, for review through the Child Victim Identification Program, or CVIP.

*c. SUBJECT DEVICE 9 Contains a List of CSAM Series Names*

77. Discovered on this device was a document with file name "tracking.rtf," with a "Created Date of "8/15/2011," a "Last Accessed Date" of "4/15/2013," and a source of "PHPD1650 Apple Mini 320GB.E01 - Partition 2 (Apple HFS+, 297.77 GB) Locnar\Users\halfrest\Desktop\misc.\tracking.rtf." This document appears to contain a list of CSAM series names and dates. For example, in a list of many titles there is "{acrobatic nymphets) (dec 22)," "-virginsinfor full site rip 3GB (dec21)," "wild nymphets 54 pics (dec 20)," and "little angels 18000 94 set (dec 12)." At the bottom of the document is also website URLs, which include: "http://nymphs.allmaxwells.net/?a=1-A389219" and "http://preteen0.com/free/."

9. <u>SUBJECT DEVICE 10: Apple Mac Mini Computer (2023) (model number A2686)</u>

78. I am aware, based on HTTF Forensic Examiner Solis's report, that this device is encrypted and password protected; consequently, at this time, I was not able to review any information from this device. Based on examination photographs taken by HTTF when attempting to access SUBJECT DEVICE 10, I am aware that in the "macOS Recovery" state, the device asked to "Select an admin user you know the password for" and the only admin user was "newlocnar" with a photograph that I recognize to

be of MARTINOV. Based on my training and experience, I believe that the FBI Computer Analysis Response Team may be able to gain access to this device utilizing specialized techniques consistent with the parameters of the proposed warrant.

10. SUBJECT DEVICE 11: Western Digital Easystore External Storage Drive (serial number 7HK92GTF)

79. I am aware, based on HTTF Forensic Examiner Solis's report, that this device is encrypted; consequently, at this time, I was not able to review any information from this device. Based on my training and experience, I believe that the FBI Computer Analysis Response Team may be able to gain access to this device utilizing specialized techniques consistent with the parameters of the proposed warrant.

11. SUBJECT DEVICE 12: Western Digital Easystore External Storage Drive (serial number 7HKJWK6J)

*a. SUBJECT DEVICE 12 Contains Hidden Camera Video of MV1, Hidden Camera Video of MV2, Video of MV3, and Voyeuristic Images from MARTINOV's Prior Workplace*

80. As noted in greater detail below, located on this device is a hidden camera video of MV1 changing in MARTINOV's upstairs guest bathroom. This video aligns with the image MV1 saw of herself on MARTINOV's phone on July 25, 2024, which lead her to the discovery of the hidden camera device (SUBJECT DEVICE 1). In addition, as detailed below, discovered on this device are preteen hidden camera videos of MV2 in MARTINOV's upstairs guest bathroom, in which MARTINOV is seen showing MV2 how to turn on the shower in the bathroom. Furthermore, as detailed below, discovered on the device is a video with a "Created Date"

of "4/25/2014," which depicts MV3 lying on a hotel bed in a hotel room, in which MARTINOV can be heard speaking. Lastly, as detailed below, discovered on this device is approximately 347 videos and over 1,000 images of voyeurism of preteen females. Many of the videos/images appear to be taken in an arcade setting and in some of the videos/images the "Kids World" logo can be seen. MARTINOV worked at Kids World, which is a "Family Fun Center" tailored toward "Kids Birthday Parties & Indoor Playground."

*b. SUBJECT DEVICE 12 Contains MV1 Hidden Camera Video*

81. Based on my review of this device, Detective Mora's reports, and Detective Mora's recorded interview of MV1, in which MV1 identified herself in still shots from the video, I am aware of the following: The device contains one hidden camera bathroom video, which depicts a teenage female, identified as MV1, year of birth in 2011, who was approximately 13 years old when the video was recorded. The video, with file name "7D37BAEB-E774-4A0C-B375-A05C15C19D21.mp4," and a "Created Date" of "7/26/2024," and a "Last Accessed Date" of "7/30/2024," depicts MV1 changing into a swimsuit in MARTINOV's guest bathroom, which I recognize as the guest bathroom in the residence located at 776 Seawind Way, Port Hueneme, California. MV1's exposed breasts and genitalia are visible during the video.

*c. SUBJECT DEVICE 12 Contain Preteen MV2 Hidden*

*Camera Videos*

82. Based on my review of this device, Detective Mora's reports, and Detective Mora's recorded interview of MV2, in which MV2 identified herself in still shots from the videos, I am aware of the following: the device contains approximately 15 hidden camera bathroom videos, which depict a preteen female identified as MV2, year of birth 2006, who was approximately 7 years old when the videos were recorded. The videos appear to depict a single incident broken up into 15 videos, which all take place in MARTINOV's guest bathroom, which I recognize as the guest bathroom in the residence located at 776 Seawind Way, Port Hueneme, California. The videos depict MARTINOV turning on the shower for MV2 before exiting the bathroom. MV2 then proceeds to undress, shower, and then put on clothing. For example:

a. Video with file name "1754F2DD-3F48-450E-A461-F62CF4020E27.avi" depicts MARTINOV assisting MV2 set up the shower before he exits. Prior to exiting the door, MARTINOV tells MV2 how to lock the bathroom door.



b. Video with file name "1DD5BE4D-34F2-4227-B9A5-4106B97C61C6.avi" is a visual depiction of a topless preteen MV2 removing her pants and underwear before getting into the shower. MV2's exposed breasts, buttocks, and genitalia are visible during the video.

c. Video with file name "5938D146-F046-4942-B266-0942300B5796.avi" is a visual depiction of the same bathroom; although, the video is now mostly blocked by clothing and the shower does not seem to be running anymore. MV2 comes into view and her genitalia (pubic hair) can be seen. She then appears to put on underwear.

*d. SUBJECT DEVICE 12 Contain Teenage MV2 Hidden Camera Videos*

83. Based on my review of this device, Detective Mora's reports, and Detective Mora's recorded interview of MV2, in which MV2 identified herself in still shots from the videos, I am aware of the following: the device also contains approximately 40 hidden camera bathroom videos, which depict MV2 when she is approximately 17 years old, in March of 2024 and June of 2024. The videos depict MV2 using MARTINOV's guest bathroom located at 776 Seawind Way, Port Hueneme, California, for example:

a. Video with file name "0BBBB330-B671-480C-B851-E39F46B33D2A.mp4," with a "Created Date" of "3/29/2024," is a visual depiction of a teenage MV2 using MARTINOV's guest bathroom. MV2 stands up from the toilet and as she is wearing a top but not bottoms, her genitalia are exposed to the recording

device. MV2 puts on underwear and sweatpants/sweat-shorts. During the video, MV2 pulls up her top and her breasts are partially exposed to the recording device.

b. Video with file name "C8C3E196-6CC4-4681-BEC9-67A2E8776A13.mp4," with a "Created Date" of "3/29/2024," is a visual depiction of a teenage MV2 getting ready in MARTINOV's guest bathroom. During the video, MV2 is captured completely nude by the recording device. MV2 is facing the camera and her breasts and genitalia are visible. MV2 then appears to put on a bathing suit bottom and top, and then sweat-shorts.

c. Video with file name "5D815654-7477-48BF-B0DE-725B939C434E.mp4," with a "Created Date" of "3/29/2024," is a visual depiction of a teenage MV2 changing out of a swimsuit type outfit into pants and a t-shirt. MV2's exposed breasts, buttocks, and genitalia are seen during the video.

d. Video with file name "4713745D-2C35-4592-BC7D-29A3F61DDE3E.mp4," with a "Created Date" of "6/25/2024," is a visual depiction of a teenage MV2 undressing, appearing to use the toilet, showering, and then dressing and getting ready before exiting the bathroom. MV2 exposed breasts, buttocks, and genitalia are seen during the video.

*e. SUBJECT DEVICE 12 Contains Video of MV3 on Hotel Bed*

84. A Video with file name "4483A400-3D3E-4136-B83B-27C8BBB4B8F5.mov" and a "Created Date" of "4/25/2014,"[9] depicts a

[9] As noted above, based on my participation in this case, Detective Mora's recorded interviews of MV3 and MV3's mother, my *(footnote cont'd on next page)*

preteen female lying on what appears to be a hotel bed with white sheets and using her cell phone. The female is wearing a yellow T-shirt with a red logo over the left breast and blue, spandex-type shorts. The female's face is visible during the video and I recognize the female to be MV3. This video is similar to the other videos of MV3 discovered on SUJBECT DEVICE 5, Apple MacBook Pro (A1297). In this video, a male voice is heard speaking, which I believe to be MARTINOV's voice. I am familiar with MARTINOV's voice from reviewing the hidden camera videos where MARTINOV speaks and also from reviewing body worn camera footage taken by PHPD during the search of MARTINOV's residence.

*f. SUBJECT DEVICE 12 Contains CSAM Videos and Images*

85. On SUBJECT DEVICE 12, investigators found approximately 100 videos of CSAM. These videos were submitted to NCMEC on March 26, 2026, for review through the Child Victim Identification Program, or CVIP. On September 30, 2026, NCMEC provided a Child Identification Report and a Victim Identification Report. The reports identified 20 videos as known videos in which there is an identified child. Three of the videos depicting identified child victims are described below:

a. Video with file name "febfeb001-lowcopy.mp4" appears to depict a prepubescent female, younger than 10 years

---

own interview of MV3's mother, and emails provided by MV3's mother, I am aware that on April 25, 2014, MV3 stayed with MARTINOV in a hotel as she attended a competition with MARTINOV as her coach.

old, laying face down on an elevated table with her arms and legs spread to the side. Her limbs appear to be bound. The prepubescent female has her underwear pulled down, exposing her bare buttocks. An adult male rubs his erect penis on the prepubescent female's mouth and places his penis inside her mouth. This video was stored within the following file path on SUBJECT DEVICE 12: PHPD1654 WD ED 8TB.E01 – Partition 2 (Apple HFS+, 7.28 TB) Locnar Primary\backup from Locnar 8.1.23\Desktop\moved from Locnar 1.15.24\from TOR\good vid from tor\.

b. Video with file name "nov-0003.webm" depicts an adult male, lying on his back with his penis erect. Two prepubescent females, both younger than 10 years old, are lying naked on their stomachs with their heads facing the man's erect penis. The prepubescent females orally copulate the erect penis. The man's left hand can be seen fondling the buttocks of the prepubescent female on the left. This video was stored within the following file path on SUBJECT DEVICE 12: PHPD1654 WD ED 8TB.E01-Partition 2 (Apple HFS+, 7.28 TB) Locnar Primary\backup from Locnar 8.1.23\Desktop\moved from Locnar 1.15.24\from TOR\converted webm s\.

c. Video file name "ExchangePreview_JOYE2153.mp4" appears to depict a naked, adult male lying on his back. He is using his hands and arms to hold up a prepubescent female, younger than 10 years old, who is nude from the waist down. The adult male is depicted having sexual intercourse with the prepubescent female by thrusting his erect penis upward and

penetrating the prepubescent female. This video was stored within the following file path on SUBJECT DEVICE 12: PHPD1654 WD ED 8TB.E01 - Partition 2 (Apple HFS+, 7.28 TB) Locnar Primary\backup from Locnar 8.1.23\Desktop\moved from Locnar 1.15.24\from TOR\Preview\.

86. On SUBJECT DEVICE 12, investigators found 215 CSAM images. These images were submitted to NCMEC on March 26, 2026, for review through CVIP. On September 30, 2026, NCMEC provided a Child Identification Report and a Victim Identification Report. The reports identified 65 images as known images in which there is an identified child.

*g. SUBJECT DEVICE 12 Contains "Spying_on_little_girls.avi.jpg." File*

87. Also on SUBJECT DEVICE 12, was a file with file name "Spying_on_little_girls.avi.jpg." While NCMEC did not identify the visual depictions within this file as a known image in which there is an identified child, this image is notable as it appears to be a screenshot of a pedophile website in which the user could obtain an approximately 18-minute video of hidden camera footage of prepubescent or preteen girls changing in dressing room stalls. The image has a blue banner at the top, which in the top right has a logo for "Pedo Play." The left side of the blue banner has three distinct paragraphs, which state "File size: 190.5 MiB[¶] Video Duration: 18:31[¶] Video Resolution: 720x576"[¶]; "1 Day Limited Speed Trial: $10 (we are legit. This is the proof!) [¶] **Full 30 Days** Access: $59 for 1 Month [¶] Pay with Monero or Bitcoin. 100% Anonymous!"; "430

Gbytes of Preteen and Underage Porn Video! [¶] 465 hours 45 minutes of pedo video!" The rest of the image is broken up into four columns of nine screenshots each, which appear to be screenshots of the described video as the bottom right of each screenshot has a time stamp. A majority of the screenshots appear to show prepubescent or preteen girls changing in a dressing room with the hidden camera mainly capturing their waists and below. The girls are in different states of undress, including multiple screenshots in which vaginas are captured. There is a QR code in the middle of the screen, which notes on the bottom "Scan me for onion address." This image was stored within the following file path on SUBJECT DEVICE 12: PHPD1654 WD ED 8TB.E01 - Partition 2 (Apple HFS+, 7.28TB) Locnar Primary\backup from Locnar 8.1.23\Desktop\moved from Locnar 1.15.24\from TOR\pics from tor\.

Similar to the above image, images with file names "IMG_3327-Kopie.mov.jpg," "IMG_3210-Kopie.mov.jpg," "IMG_3798-Kopie.mp4.jpg," and "IMG_1002-Kopie.mp4.jpg," appear to be an advertisement for "Pedo Play" for different hidden camera videos of preteens or teenagers (age difficult) changing into swimsuits.[10] These four images are set up in the same way as the image described above, with the blue banner describing the size of the video and also payments for access to "Pedo Play." The main part of the images are four columns of nine screenshots each from the videos. Each of these videos appear to show

[10] NCMEC did not identify these images as known images in which there is an identified child.

preteen or teenage women changing into or out of swimsuits. The angle of the recording device is from above and all of the videos seem to be recorded in the same changing stall. These images were stored within the following file path on SUBJECT DEVICE 12: PHPD1654 WD ED 8TB.E01 - Partition 2 (Apple HFS+, 7.28 TB) Locnar Primary\backup from Locnar 8.1.23\Desktop\moved from Locnar 1.15.24\from TOR\pics from tor\.

*h. SUBJECT DEVICE 12 Contains Videos and Images of Preteens, Including Depictions Captured at MARTINOV's Former Place of Work*

88. On SUBJECT DEVICE 12, investigators found approximately 347 videos of mostly preteen females in public. Most of these videos appear to have been recorded inside an arcade-type business and several of these videos depict the "Kids World" logo. The Kids World logo is a green puzzle piece with the words "Kids World" written in red, yellow, and blue letters. I am aware, based on my participation in this investigation and from body worn camera videos from PHPD's search of MARTINOV's residence, that MARTINOV worked at Kids World in the Conejo Valley beginning in around 2016. Based on an open source search, I am also aware that Kids World is advertised as a "Family Fun Center" and is tailored toward "Kids Birthday Parties & Indoor Playground."

89. On SUBJECT DEVICE 12, investigators found 1,000 images of mostly juvenile females in public, including at stores, restaurants, and an arcade type setting. Many of the images appear to be of the same scenarios as the 347 voyeurism videos

noted above. Similar to the videos, in some of the images, the "Kids World" logo can be seen.

*12.* SUBJECT DEVICE 13: USB Drive Containing Photos from Disposable Cameras Contain Images of Young Females

90. Based on PHPD Detective Mora's report, I am aware that this device contains two photographs of a young female wearing a T-shirt and underwear. The photos are taken from behind the young female. In one of the photographs, the unidentified female is walking on the street. In the second photograph, the unidentified female is inside a business.

## VII. TRAINING & EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

91. Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity. These individuals often maintain possession of these items for long periods of time and keep

their collections in numerous places – in digital devices in their homes, in their cars, in their workplaces, or on their persons. MARTINOV appears to create and possess CSAM, but also other visual depictions of children in swimwear and of the buttocks and legs of children.

b. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials (including through digital distribution via the Internet); conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. These individuals often maintain possession of these items for long periods of time. In this case, MARTINOV appears to have engaged in some of this correspondence. For example, he appears to have exchanged messages with another person with a sexual interest in children and asked for a "full size pic" in exchange for "something equally as beautiful in return."

92. Digital child pornography on a digital device is easy to maintain for long periods of time. Modern digital devices often have extremely large storage capacities. Furthermore, cheap and readily available storage devices, such as thumb drives, external hard drives, and compact discs make it simple for individuals with a sexual interest in children to download child pornography from the Internet and save it – simply and securely – so it can be accessed or viewed indefinitely.

93. Furthermore, even if a person deleted any images of child pornography that may have been possessed or distributed, there is still probable cause to believe that there will be evidence of the illegal activities – that is, the possession, receipt, and/or distribution of child pornography. Based on my training and experience, as well as my conversations with digital forensic experts, I know that remnants of such files can be recovered months or years after they have been deleted from a computer device. Evidence that child pornography files were downloaded and viewed can also be recovered, even after the files themselves have been deleted, using forensic tools. Because remnants of the possession, distribution, and viewing of child pornography is recoverable after long periods of time, searching the SUBJECT DEVICES, and potentially accessing data that was not previously accessed by local investigators, could lead to evidence of the child exploitation offenses.

## VIII. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[11]

94. As used herein, the term "digital device" includes the SUBJECT DEVICES.

[11] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

95. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat

programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

96. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

e. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

f. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of

data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

## IX. CONCLUSION

97. For all the reasons described above, there is probable cause to believe that MARTINOV committed a violation of 18 U.S.C. § 2251(a), (e) (Attempted Production of Child Pornography) on or about July 25, 2024 in Ventura County. There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 28th day of
October, 2026.

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF,<br>v.<br>JEFFREY AARON MARTINOV,<br>DEFENDANT. | **WARRANT FOR ARREST**<br>ON COMPLAINT<br>CASE NO. 2:26-mj-06269-DUTY |

To: UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **JEFFREY AARON MARTINOV** and bring him forthwith to the nearest Magistrate Judge to answer a complaint charging him with Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a), (e).

REC: BY AUSA Peter Dahlquist [Detention]

October 28, 2026
Date

THE HONORABLE DANIEL S. ROBERTS

Dan Roberts
Signature of U.S. Magistrate Judge

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at (location): | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

**DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO**